UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-107-HRW

RICO LYVERS                                                                               PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

LISA SULLIMAN, ET AL.                                                              DEFENDANTS

The plaintiff, Rico Lyvers, who is currently confined in the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky, has filed a civil rights complaint under 42 U.S.C. §1983 [Record No. 1]. He has also filed an "Application to Proceed *In Forma Pauperis*" [Record No. 2]. The Court will address the *in forma pauperis* motion by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C.

§1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The plaintiff named the following defendants: (1) Lisa Sulliman, Correctional Officer at the LSCC; (2) David Boggs, Correctional Officer at the LSCC; (3) Gary Beckstrom, Warden of the LSCC; and (4) Charles Williams, Director of Operations/Programs for the Kentucky Department of Corrections ("KDOC"). The plaintiff sued each defendant only in his/her individual capacity.

## CLAIMS

The plaintiff alleges that the named defendants violated his Eighth and Fourteenth Amendment rights by requiring him to submit to an unauthorized strip search. Additionally, he alleges that they violated his Eighth and Fourteenth Amendment rights by ordering him to serve 45 days in administrative confinement, a sanction imposed as the result of a prison disciplinary proceeding.

## ALLEGATIONS OF THE COMPLAINT

The plaintiff alleges that on November 10, 2005, Defendant Lisa Sulliman, a correctional officer at the LSCC, ordered him to submit to a strip search. The plaintiff involuntarily submitted to the strip search conducted by other LSCC staff on Sulliman's order and direction. He contends in his complaint that while LSCC staff may have had a right to order him to submit to a pat-down (non-strip search) search, they were not authorized under the circumstances to

require him to submit to a strip search. When the plaintiff verbally protested the strip search, he was charged with making threatening verbal statements to prison staff.

The plaintiff was charged with the offense of making threatening or intimidating statements. The disciplinary hearing took place on November 17, 2005. The plaintiff was found guilty of the charge. The penalty consisted of an assignment to Disciplinary Segregation for 45 days and the loss of 60 days of good time credit.

The plaintiff filed a grievance in which he complained about the strip search, his confinement in segregation, and the loss of 60 days of good time credit. On March 23, 2006, Warden Beckstrom denied the grievance on the basis of untimeliness. On appeal of Beckstrom's denial, however, Charles E. Williams, employee of the Commissioner of the KDOC, addressed the merits of the plaintiff's arguments by letter dated April 26, 2006. Williams stated that according to the KDOC's Corrections Policies and Procedures ("CPP") 9.8, the LSCC staff acted within its authority when it ordered the plaintiff to submit to the strip search.

### RELIEF REQUESTED

The plaintiff seeks substantial monetary damages and injunctive relief in the form of an order prohibiting the defendants from retaliating against him.

### DISCUSSION
#### 1. Claims Related to Disciplinary Sanctions

The plaintiff asserts a claim in his §1983 complaint for monetary damages arising from the fact that he was removed from the general prison population and confined in segregation for 45 days. His claim on this issue is a collateral challenge of his disciplinary proceeding.

To the extent that the duration of the plaintiff's criminal sentence may be affected by a prison disciplinary action, he may not challenge it with a §1983 action. *See Heck v. Humphrey*,

3

512 U.S. 477, 486-87, 114 S. Ct. 2364 (1994). In *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584 (1997), the Supreme Court extended *Heck* to bar §1983 actions that do not directly challenge confinement, but instead challenge procedures which necessarily imply unlawful confinement. *Id*. at 646.

A prisoner found guilty in a prison disciplinary hearing cannot use §1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir.2000), overruled in part by *Muhammad v. Close*, 540 U.S. 749, 754-55, 124 S. Ct. 1303 (2004) (*Heck* does not apply if the prisoner's lawsuit does not threaten any consequence of the plaintiff's conviction or the duration of his sentence).

Here, the plaintiff does not specifically demand the restoration of the 60 days of good time credit in his §1983 complaint, but as noted, he does collaterally challenge the other sanction imposed as a result of the November 17, 2005 disciplinary proceeding: 45 days of confinement in administrative segregation.

A successful challenge of the facts and circumstances involved in the plaintiff's administrative segregation sanction could also impact on the other sanction imposed, the forfeiture of his 60 days of good time credit. If that occurred, the plaintiff--by having filed this §1983 action--could then challenge the duration of his sentence, currently affected (increased) by the loss of the 60 days of good time credit. *Muhammad* is therefore inapposite.

The plaintiff's convictions on the threatening statement charge would, therefore, impact the duration of his confinement. Such a result is prohibited by *Edwards v. Balisok*, 520 U.S. at 646 (prisoner's claim not cognizable under §1983 because "[t]he principal procedural defect complained of ... would, if established, necessarily imply the invalidity of the deprivation of his

4

good-time credits"). *See also McMillan v. Fielding,* 136 Fed. Appx. 818, 820, 2005 WL 1389523 (6th Cir.(Tenn.)) (Not selected for publication in the Federal Reporter).

## 2. Claims Relating to Strip Search
### A. Defendants Sulliman and Boggs

The Court has reviewed CPP 9.8 entitled *Search Policy*, specifically §II (A) (1) (a)-(c). While these provisions state that a prisoner shall be subject to a *pat-down* search at all times, the regulation specifies that *strip searches* are authorized only in certain circumstances.[1] The

---

[1]
CPP 9.8, *Search Policy*, Section II, entitled *Policy and Procedure*, provides in relevant part as follows:

1. General Policy

    a. All inmate areas shall be subject to a search at any time.

    b. All inmates shall be subject to a search at any time.

    c. All inmates shall be subject to a strip search if

        (1) Entering or exiting an institution,

        (2) Entering or exiting the visiting area, and

        (3) Entering or exiting a controlled area, the Prison Industries Area, boiler room area or other area to which access by Inmates is limited.

    d. Inmates, who do not fall into one of the strip search categories above, may be strip searched if reasonable suspicion exists that the Inmate is carrying contraband.

    e. Body cavity searches may be made in conjunction with strip Searches but only if a reasonable suspicion exists that the inmate is Carrying contraband in a cavity. All body cavity searches shall be Approved by the Warden or his designee.

5

plaintiff alleges that he was stopped as he left the prison library. The "Occurrence Report" which Correctional Officer David Boggs prepared appears to be consistent with the plaintiff's statement. Boggs states that he and Defendant Sulliman stopped the plaintiff as he was leaving "academics" to conduct a "random" pat-down and strip search.

On initial and preliminary review of CPP 9.8, the Court finds no authority for a "random" strip search under these facts. CPP 9.8, §I clearly authorizes a random "pat-down search" of a clothed prisoner. It authorizes a strip search, but only when the specific requirements of CPP 9.8 §II (1)(c), (d) or (e) are satisfied. Here, the plaintiff alleges that when he was ordered to submit to the strip search, he was leaving the library, which does not appear at first blush to be an " . . other area to which access by inmates is limited." [*Id.*, §(c)(3)] Defendant Boggs does not indicate in his Report that either he or Defendant Sulliman had a reasonable suspicion that the plaintiff was carrying contraband as set forth in CPP 9.8, §I (d) or (e). The Court will require an answer from Defendants Sulliman and Boggs on this claim.

### B. Defendants Beckstrom and Williams

The Court is required to dismiss the plaintiff's claims against Defendant Beckstrom. The plaintiff's claim is that Beckstrom supported the defendants' actions when the plaintiff filed a grievance about the incident, after the fact. Thus, the plaintiff's claims against Warden Beckstrom fall under the theory of *respondeat superior*.

The doctrine of *respondeat superior* cannot provide the basis for liability under §1983. Proof of personal involvement is required for a supervisor to incur personal liability under §1983, and liability cannot be imposed under a theory of *respondeat superior*. *Bellamy v.*

*Bradley*, 729 F.2d 416, 421 (6th Cir.) ("[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*.

There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."), *cert. denied*, 469 U.S. 845, 105 S. Ct. 156, (1984); *see also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989); and *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir.1982). Here, the plaintiff does not allege that Beckstrom was personally involved with, or ordered or directed, the complained-of strip search. Indeed, the plaintiff alleges that Defendant Sulliman was the moving force behind the strip search.

To the extent that the plaintiff alleges that Defendant Charles E. Williams (employee of the KDOC) and Warden Beckstrom violated his constitutional rights by rejecting his administrative grievances, those claims fail. There is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).[2] In sum, the plaintiff's

---

[2]

There are numerous Sixth Circuit cases which also hold that there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc.* 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) ("In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure. The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective

7

individual capacity claims against Defendants Williams and Beckstrom must be dismissed as frivolous.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The plaintiff's individual capacity claims against Defendants Charles E. Williams and Gary Beckstrom are **DISMISSED WITH PREJUDICE**.

(2) The Ashland Clerk is directed to issue summons for the named defendants: (1) Lisa Sulliman, Correctional Officer at the LSCC; and (2) David Boggs, Correctional Officer at the LSCC, in their individual capacities, on the issue of the Eighth Amendment strip search claim.

(3) The Ashland Clerk's Office shall prepare as many copies of the complaint as there are summonses issued and complete the requisite number of USM Form(s) 285.

    (a) If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

    (b) The Ashland Clerk's Office shall forward by certified mail the following

---

prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

documents: (i) the summonses issued; (ii) the requisite number of USM Forms 285; (iii) the requisite number of complaint copies; and (iv) the requisite number of copies of this Opinion and Order, and/or any other documents necessary to effectuate service.

(c) The Ashland Clerk's Office shall enter the certified mail receipt into the record, and a notation that the delivery to the USM Office of the complaints, summonses, USM Forms 285, and any other attachments have been effectuated, and the date upon which they were effectuated.

(d) The USM Office shall serve a summons, complaint copy, and copy of this Order on the defendants to this action; service to be made by certified mail, return receipt requested, or by personal service.

(e) The USM Office shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(4) The Ashland Clerk is further directed to serve a copy of this Memorandum Opinion and Order on the Kentucky Department of Corrections, and to note the service in the docket sheet.

(5) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(6) For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a

9

certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

This   August   11,   2006.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge