UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION** at **ASHLAND**

CIVIL ACTION NO. 06-CV-107-JMH

RICO LYVERS,                                              PLAINTIFF,

v:                    **MEMORANDUM OPINION AND ORDER**

LISA SULLIMAN, ET AL.,                                    DEFENDANTS.

* * * * *

Currently before the Court are the following:

(1)  the "Motion for Summary Judgment filed by counsel for defendants Lisa Sulliman and David Boggs [Record No. 45];

(2)  the "Motion for Summary Judgment" filed by Rico Lyvers, the *pro se* plaintiff [Record No. 48]; and

(3)  the defendants' "Response to Plaintiff's Motion for Summary Judgment" [Record No. 49].

FACTUAL BACKGROUND

The following is a summary of the allegations contained in the pleadings filed in this action; specifically, the complaint and attachments [Record No. 1]; the Memorandum Opinion and Order ("the Opinion and Order") entered by the Court on August 14, 2006 [Record No. 9]; the defendants' answer [Record No. 18]; the defendants' motion for summary judgment and supporting documents [Record No. 45]; the plaintiff's response to the motion for summary judgment

[Record No. 48]; and the defendants' response to the plaintiff's motion for summary judgment [Record No. 49].

### 1.   The Complaint

Plaintiff Rico Lyvers is confined in the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky.  On July 14, 2006, he filed a civil rights complaint under 42 U.S.C. § 1983 [Record No. 1].  The plaintiff named the following defendants:  (1) Lisa Sulliman, Correctional Officer at the LSCC; (2) David Boggs, Correctional Officer at the LSCC; (3) Gary Beckstrom, Warden of the LSCC; and (4) Charles Williams, Director of Operations/Programs for the Kentucky Department of Corrections ("KDOC").  The plaintiff sued each defendant only in his/her individual capacity.

The plaintiff asserted two claims.  First, he alleged that the defendants, all LSCC officials, violated his Eighth and Fourteenth Amendment rights by requiring him to submit to an unauthorized strip search.  Second, he alleged that the defendants violated his Eighth and Fourteenth Amendment rights by ordering him to serve 45 days in administrative confinement, a sanction imposed as the result of a prison disciplinary proceeding.  The plaintiff seeks substantial monetary damages and injunctive relief in the form of an order prohibiting the defendants from retaliating against him.

The plaintiff alleged that on November 10, 2005, as he was leaving the LSCC library, Defendant Lisa Sulliman ordered him to submit to a strip search.  Plaintiff contends that when he asked

2

Defendant Boggs as to why he was being ordered to submit to the strip search, Boggs replied that the answer was simple:  because Defendant Sulliman had ordered the search.   According to the plaintiff, Defendant Boggs further explained that Defendant Sulliman did not need a motive for ordering the search.  Over the plaintiff's protest, Defendant Boggs executed the strip search.

Plaintiff alleged that he protested the strip search on the basis of Kentucky Department of Corrections Policies and Procedures 9.8 (hereafter referred to as "CPP").  CPP 9.8 is entitled *Search Policy*, and the subsection on which the plaintiff relies is § II,(A)(1)a)-(c).

Plaintiff alleged that while LSCC staff may have had a right to order him to submit to a pat-down (non-strip search) search, they were not authorized under the facts or under CPP 9.8 § II,(A)(1)a)-(c) to require him to submit to a **strip search**.  When the plaintiff verbally protested the strip search, he was charged with making threatening verbal statements to prison staff.

Defendant Boggs prepared an "Occurrence Report" on November 10, 2005 [Record No. 1-6].  The "Occurrence Report" appears to be consistent with the plaintiff's statement, in that Defendant Boggs stated that he and Defendant Sulliman stopped the plaintiff as he was leaving "academics" to conduct a "random" pat-down and strip search.  Boggs provided no other factual basis, and alleged no other claims, in support of Sulliman's  decision to order the

3

plaintiff to undergo the strip search and his decision to execute the strip search.

The plaintiff was charged with the offense of making threatening or intimidating statements.  The disciplinary hearing took place on November 17, 2005.  The plaintiff was found guilty of the charge.  He was assigned to Disciplinary Segregation for 45 days and he lost 60 days of good time credit.

The plaintiff filed a grievance in which he complained about the strip search, his confinement in segregation, and the loss of 60 days of good time credit.  On March 23, 2006, Warden Beckstrom denied the grievance on the basis of untimeliness.  On appeal of Beckstrom's denial, however, Charles E. Williams, employee of the Commissioner of the KDOC, addressed the merits of the plaintiff's arguments by letter dated April 26, 2006.  Williams stated that according to the KDOC's Corrections Policies and Procedures ("CPP") 9.8, the LSCC staff acted within its  authority when it ordered the plaintiff to submit to the strip search.

### 2.  Opinion and Order of August 14, 2006

In the Opinion and Order entered on August 14, 2006, the Court first concluded that plaintiff could not assert a claim under § 1983 for monetary damages stemming from the disciplinary sanction of removal from the general prison population and confinement in segregation for 45 days [Record No. 9].  The Court determined that such claims would amount to a collateral challenge of his

4

disciplinary proceeding, a result prohibited by *Heck v. Humphrey*, 512 U.S. 477, 486-87(1994), and *Edwards v. Balisok*, 520 U.S. 641(1997).

Second, the Court dismissed the plaintiff's claims against Defendant Beckstrom [Record No.9]. The plaintiff's claim was that Beckstrom supported the defendants' actions when the plaintiff filed a grievance about the incident, after the fact.

As Warden Beckstrom was not alleged to have been personally involved in the decision to require the plaintiff to submit to the strip search, the plaintiff's claims against him fell under the theory of *respondeat superior.* The Court noted that Section 1983 liability cannot be imposed solely upon the basis of *respondeat superior*. *Hays v. Jefferson County, Ky*., 668 F.2d 869, 872 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Third, the Court dismissed the plaintiff's claims against Defendant Charles E. Williams (employee of the KDOC) and Warden Beckstrom [Record No. 9]. Plaintiff argued that these defendants violated his constitutional rights by rejecting his administrative grievances. The Court determined that based on the case law, there is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Fourth, the Court ordered the remaining defendants (Sulliman and Boggs) to answer on the issue of the propriety of the strip

5

search under the Eighth and/or Fourteenth Amendments of the United States Constitution [Record No. 9].  The Court noted some concern with the fact that while CPP 9.8 renders a state prisoner subject to a *pat-down* search at all times, it specifies that *strip searches* are authorized only in certain circumstances.[1]

The Court noted that according to the complaint and attachments, the facts did not appear to warrant the strip search [*Id.*].

3.   Answer and Discovery

---

[1]

CPP 9.8, *Search Policy*, Section II, entitled *Policy and Procedure*, provides in relevant part as follows:

1.   General Policy

a.   All inmate areas shall be subject to a search at any time.

b.   All inmates shall be subject to a search at any time.

**c.   All inmates shall be subject to a strip search if**

**(1)   Entering or exiting an institution,**
**(2)   Entering or exiting the visiting area, and**
**(3)   Entering or exiting a controlled area, the Prison Industries Area, boiler room area or other area to which access by Inmates is limited.**

d.   Inmates, who do not fall into one of the strip search categories above, may be strip searched if reasonable suspicion exists that the Inmate is carrying contraband.

e.   Body cavity searches may be made in conjunction with strip searches but only if a reasonable suspicion exists that the inmate is carrying contraband in a cavity.  All body cavity searches shall be approved by the Warden or his designee.

(Emphasis added).

6

On October 25, 2006, Defendants Sulliman and Boggs filed their Answer, in which they denied committing any action construed as a constitutional violation [Record No. 18].  They alleged that the plaintiff had not exhausted his administrative remedies and further alleged that they were protected by the doctrine of sovereign and/or qualified immunity [*Id.*].

The Court entered a "Scheduling Order" on October 31, 2006, giving the parties 120 days in which to complete discovery [Record No. 20] Thereafter, the plaintiff had some difficulty properly serving his discovery requests on the defendants.[2]

On March 8, 2007 the Court entered an Order which: (1) compelled the defendants to answer the plaintiff's discovery and (2) granted the defendants ten days from March 8, 2007, in which to answer the discovery [Record No. 41].

Defendants' counsel filed a Certificate of Service on March 16, 2007, stating that the defendants had served the plaintiff with the defendants' answers to the plaintiff's various discovery requests [Record No. 44].

### 4.  Summary Judgment Motions and Responses

On March 29, 2007, Defendants Sulliman and Boggs filed a motion for summary judgment [Record No. 45].  They attach an

---

[2]

The issues concerning the proper service of the plaintiff's discovery are set forth in the Orders entered by Magistrate Judge Edward B. Atkins on March 8 and 9, 2007 [Record Nos. 41 and 42].  The Court will not recount those facts and issues here.

affidavit from Defendant Sulliman, dated March 26, 2007.  Sulliman

states as follows in her Affidavit:

> Comes the Affiant, Lisa sulliman, upon being duly
> sworn an states as follows:
>
> 1.   I am currently employed as a corrections officer by
> the Commonwealth of Kentucky, Department of Corrections
> at the Little Sandy Correctional complex in Sandy Hook,
> Kentucky.  That on November 10, 2005, while so employed,
> I observed inmate Lyvers in the prison library acting in
> a suspicious manner.  I observed inmate Lyvers' behavior
> on a video monitor in the control room which covers the
> library area.  Specifically, inmate Lyvers continually
> looked around the area to see if he was being observed by
> corrections staff and then looked back to his hands and
> then placed his hands inside his clothing.  This conduct
> gave me reason to believe that inmate Lyvers was
> attempting to conceal contraband on his person.
>
> 2.   As a matter of standard procedure, when exiting the
> prison library, a number of inmates are selected for
> random pat-down searches pursuant to Kentucky Corrections
> Policy and Procedure 9.8.  On the day in question, inmate
> Lyvers was selected for a random "pat-down" search.
> Further, since I had observed the conduct set forth above
> on the part of inmate Lyvers, I asked corrections officer
> David Boggs to conduct a strip search of inmate Lyvers
> since I had reasonable suspicion to believe that inmate
> Lyvers was concealing contraband upon his person.
>
> 3.   The search was conducted and no contraband was
> revealed.
>
> Further Affiant saith naught.

Thus, according to Sulliman's statements, she had "reasonable

suspicion" under CPP 9.8  II (A)(1) (d) to order the plaintiff to

submit to the strip search.  She claims that her observation that

the plaintiff may have been trying to conceal contraband

constitutes "reasonable suspicion" of action which violates the

contraband prohibition.[3]   The defendants further cited various cases which they contend hold that prison officials enjoy latitude and discretion in deciding to conduct strip searches of inmates, in order to prevent breaches of security and to maintain the orderly running of the prisons.

The plaintiff contends in his own Motion for Summary Judgment [Record No. 48] that Defendant Sulliman ordered the strip search for no legitimate purpose; that Sulliman directed Boggs to strip-search him in order to harass and intimidate him, and that Sulliman ordered the search for her personal pleasure.

In his "Motion for Summary Judgment," the plaintiff points out that the November 10, 2005 "Occurrence Report" is silent as to the allegation that he was observed acting nervously in the prison library, and that he was observed trying to conceal contraband. *See* Record No. 48-2, pp. 5-6, and 8.  He notes that this accusation was raised after the fact.

Defendants Boggs and Sulliman assert in their Response to the plaintiff's motion for summary judgment [Record No. 49] that the facts and case law allow lessened privacy interests for prisoners. They cite several cases, including but not limited to the case of

---

[3] CPP 9.8 II (A)(1) (d) states as follows:

Inmates, who do not fall into one of the strip search categories above, may be strip searched if **reasonable suspicion** exists that the Inmate is carrying contraband. (Emphasis Added)

*Bell v. Wolfish*, 441 U.S. 520(1979), and argue that these cases preclude summary disposition in the plaintiff's favor.

<u>DISCUSSION</u>
1.  <u>Standard of Review</u>

The defendants have filed motions for summary judgment under Fed.R.Civ.P. 56.  Under that rule, summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986) (citation omitted).

Under Fed.R.Civ.P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

In considering a summary judgment motion, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

2. Application of Standards to Facts

The Court must deny both motions for summary judgment for one simple reason: at this juncture, there exists a genuine issue of material fact. In the "Occurrence Report" of November 10, 2005 [Record No. 1-6, pp. 1-4], the defendants made no reference or mention of the fact that Plaintiff Lyvers had allegedly been observed--by video monitor in the prison library--attempting to conceal contraband on his person. The defendants should have

11

considered this allegation material enough to have been included in the "Occurrence Report."  As noted, the "Occurrence Report" was prepared as result of the plaintiff's strong verbal objection to the strip search.[4]

Yet the "Occurrence Report" makes no reference to this important fact now described as the justification for the strip search.  The allegation of alleged contraband smuggling was mentioned for the first time in Sulliman's March 26, 2007 Affidavit.

As the plaintiff further notes, the defendants did not offer any documents required by CPP 9.8, II (A)(1)(f)(1)-(7).  Again, these documents may exist, but they were not produced in support of the motion for summary judgment.

The video film itself may ultimately support Defendant Sulliman's sworn statement.  At this time, the Court is unable to grant a summary judgment for either the plaintiff or the defendants based on the record as it now stands.

The provisions of Fed.R.Civ.P. 56 preclude summary disposition in either parties' favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, states that summary judgment should not be granted

---

[4]

Plaintiff's objection to the strip search was so vehement that he was charged with and convicted of  a disciplinary infraction as a result thereof; spent 45 days in segregated confinement and lost 60 days of good time credit.  According to the "Occurrence Report," there did not appear to be any justification for the strip search under CPP. 98, II (A)(1)(c)(1)-(3).

"if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Here, the Court concludes that based on the record developed at this time, the evidence which the plaintiff could present *might* result in a verdict in his favor.

CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The defendants' "Motion for Summary Judgment" [Record No. 45] is **DENIED**.

(2) The plaintiff's "Motion for Summary Judgment" [Record No. 48] is **DENIED**.

(3)  This proceeding is referred to Magistrate Judge Edward B. Adkins for the purposes of:  (a) scheduling additional discovery deadlines and/or (b) scheduling any and all necessary settlement conferences.

This the 4th day of June, 2007.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**